# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MYRTICE JOHNSON,** | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 08-0572-CG-M |
| **THE CITY OF PRICHARD, et al.,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendants' motion for summary judgment (Doc. 49), plaintiff's motion for summary judgment (Doc. 53), defendants' opposition to plaintiff's motion (Doc. 57), plaintiff's opposition to defendants' motion (Doc. 59), and defendants' reply (Doc. 60). For the reasons explained below, the court finds that summary judgment is due to be granted in defendants' favor on all of plaintiff's claims except her claim for trespass based on defendants' use of her property as a parking lot.

## FACTS

Plaintiff filed this case on October 1, 2008, alleging that the defendants unlawfully entered upon her property and demolished her house located at 113 Phillips St., in the City of Prichard, Alabama ("the property"). Plaintiff's amended complaint asserts claims for 1) trespass;

1

2) fifth amendment taking; 3) due process violation; 4) fraud, misrepresentation and suppression; 5) negligence; 6) wantonness; and 7) failure to provide honest government. (Doc. 4).

The property in question was purchased by plaintiff in 1987 (Doc. 50-3, p. 4). The house on the property was occupied at times by plaintiff, her son, her daughter, her daughter's husband, and various tenants. (Doc. 50-3, pp. 4-12). The last occupant of the property was plaintiff's daughter, Marlene Bigelow, and Marlene's husband, Norman Bigelow, who vacated the property in or about September 2000. (Doc. 50-3, pp. 8-11).

In 2003, Pursuant to Alabama Code § 11-53B-1, the City of Prichard enacted Ordinance 1912, "An Ordinance to Abate Nuisances." Ordinance 1912 "permits the City, after meeting certain notice requirements, to repair or demolish unsafe Buildings and to provide an effective means of collecting an Assessment lien on the property for the costs of the work involved in abating the nuisance." (Doc. 50-5).

On or about December 2, 2004, following an inspection of the property, the Environmental Department of the City of Prichard mailed a "Notice of Hazard" to the address of the property. (Doc. 50-6). The notice stated that an inspection of the property had revealed an environmental hazard and that plaintiff is required to correct the conditions on or before December 17, 2004. (Doc. 50-7). On December 16, 2004, the Building and Inspection Department of the City of Prichard made a structural and unit inspection of the property. (Doc. 50-6). The inspection record states that the vacant property was structurally damaged and had a bad roof, bad electrical and bad plumbing system. (Doc. 50-9). Photographs were taken of the property at the time of the inspection. (Doc. 50-10). On or about December 16-17, 2004, the

Building and Inspection Department of the City of Prichard issued a Notice to Repair or Demolish. (Doc. 50-6). This second notice stated that the dilapidated structure on the property has been found to be unsafe and is a public nuisance. (Doc. 50-8). The notice further stated the following:

> YOU ARE ORDERED TO REMEDY THE ATTACHED UNSAFE CONDITION(S), OR TO DEMOLISH SUCH BUILDING OR STRUCTURE, WITHIN FORTY-FIVE (45) DAYS AFTER DATE OF THIS NOTICE, OTHERWISE THE CITY OF PRICHARD WILL HAVE THE RIGHT BUT NOT THE DUTY TO DEMOLISH SUCH BUILDING OR STRUCTURE AND THE COST OF SUCH DEMOLITION ASSESSED AGAINST THE PROPERTY ON WHICH SUCH BUILDING OR STRUCTURE IS LOCATED IN ACCORDANCE WITH THE PROVISIONS OF THE CITY OF PRICHARD ORDINANCE 1912.

(Doc. 50-8). Plaintiff testified that she discovered the notice posted on the property sometime between the years 2005 and 2006. (Doc. 50-3, pp. 13-15). She did not recall if it was as far back as 2004 that she saw the notice. (Doc. 50-3, p. 14). After seeing the notice, plaintiff called the City of Prichard and spoke to Councilman Napoleon Bracy. (Doc. 50-3, p. 16). According to plaintiff, she requested time to restore the property and was told she should talk with the mayor. (Doc. 5-3, pp. 16-17). Plaintiff testified that she spoke with Mayor Ron Davis and told him that she intended to restore the property. (Doc. 50-3, p. 17). According to plaintiff, she also asked Mayor Davis what time span she would have and Davis replied that "it wasn't anytime soon." (Doc. 50-3, pp. 17-18). Plaintiff also reports that she asked Davis if the City would contact her if the time was up to which Davis said that they would notify her. (Doc. 5-3, p. 18). Plaintiff did not have any further verbal or written communication with the City of Prichard until after the house was demolished. (Doc. 50-3, p. 21).

On September 26, 2006, the City of Prichard Public Works Department began demolition of the home located on the property. (Doc. 4, ¶ 8). Around the end of September or the beginning of October 2006, plaintiff took a contractor by the house to get an estimate and discovered it had been torn down. (Doc. 50-3, pp. 22-23). This is the first contractor she had contacted about restoring the house. (Doc. 50-3, p. 23).

Sometime after the demolition, the City of Prichard Police Department began using the property as a parking lot.[1] (Doc. 57-3, p. 2). The Mayor was unaware the property was being used for parking and when it was brought to the Mayor's attention, he immediately directed the police department to stop parking on the property. (Doc. 57-3, p. 2).

By letter dated, April 16, 2007, plaintiff was notified of a hearing to fix and assess the cost of the demolition and informed that she could appear and be heard if she had any objection. (Doc. 54-5). The notice of hearing, which was apparently sent to plaintiff's current address, stated that the house had been demolished and that "[t]he amount of $11,575.29 shall constitute a special assessment against the property." (Doc. 54-5).

**DISCUSSION**

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[1] Plaintiff's amended complaint alleges that the police department began using plaintiff's property as a parking lot on October 4, 2006, but there has been no evidence presented to support this date. (Doc. 4, ¶ 10).

4

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

Plaintiff's amended complaint asserts claims for 1) trespass; 2) fifth amendment taking; 3) due process violation; 4) fraud, misrepresentation and suppression; 5) negligence; 6) wantonness; and 7) failure to provide honest government. (Doc. 4). Defendants' motion asserts that summary

judgment is due to be granted as to all of plaintiff's claims. In response, plaintiff does not present any arguments in opposition to defendants' assertions with regard to her claim for fraud, misrepresentation and suppression; her claim for negligence; her claim for wantonness; or her claim for failure to provide honest government. Defendants argue that plaintiff's claim for fraud, misrepresentation and suppression fails because it alleges wanton behavior which is barred by ALA. CODE § 11-47-190 and because plaintiff has failed to provide evidence of an intent to deceive. Defendants assert that plaintiff's negligence claim fails because defendants are protected by substantive immunity and because the claim alleges reckless and wanton conduct which is not actionable under ALA. CODE § 11-47-190. Defendants contend that plaintiff's wantonness claim is also barred by ALA. CODE § 11-47-190. Lastly, defendants contend that they are protected by substantive immunity on plaintiff's failure to provide honest government claim and that it is barred by ALA. CODE § 11-47-190 because the claim alleges intentional conduct. Plaintiff has offered no opposition to these contentions.

"In opposing a motion for summary judgment, a 'party may not rely on [her] pleadings to avoid judgment against [her].'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11 Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted). The court deems plaintiff's claims for

fraud, misrepresentation and suppression; negligence; wantonness; and failure to provide honest government to be abandoned and finds that defendants' motion for summary judgment as to those claims is due to be granted in favor of defendants. The court will discuss plaintiff's remaining claims 1) trespass; 2) fifth amendment taking; and 3) due process violation, below.

**1. Trespass**

Defendants assert that plaintiff's trespass claim as alleged in the amended complaint is an intentional and purposeful scheme that is not actionable pursuant to ALA. CODE. § 11-47-190. Section 11-47-190 provides in pertinent part:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. …

ALA. CODE. § 11-47-190. In response, plaintiff, citing Roberts v. City of Geneva, 114 F.Supp.2d 1199 (M.D. Ala. 2000), contends that the defendants' assessment of authority was done negligently, carelessly, or unskillfully. Plaintiff argues that the defendants were negligent, careless, or unskillful in their decision to enter the property and demolish the house. Plaintiff asserts that defendants are liable for their entry upon the property to demolish the house, for the destruction of the house and for the use of the property as a parking lot.

In Roberts, the Middle District of Alabama found that the trespass alleged in that case was not barred by § 11-47-190. Roberts, 114 F.Supp.2d at 1214. Although trespass is an intentional tort, "[t]he intent required as a basis for liability as a trespass is simply an intent to be at the place on the land where the trespass allegedly occurred." Id. (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 13, at 73 (5th ed. 1984)). The alleged trespassers, in Roberts, believed that they were rightfully on the plaintiff's property and thus, their entrance on the property could conceivably result from their neglect or carelessness.

Defendants point to the allegations in plaintiff's amended complaint that defendants' trespass arose out of a purposeful scheme. Plaintiff's trespass claim states the following:

> The Defendant, on that day, completed its illegal demolition of Plaintiff's home, without Plaintiff's permission, or properly granted authority and in violation of her constitutional rights did unlawfully enter upon Plaintiff's property with the purpose of converting Plaintiff's property for Defendant's own use.

(Doc. 4, ¶ 21). Nowhere in the amended complaint does the plaintiff specifically allege that the city employees believed they were rightfully on plaintiff's property. However, the amended complaint also does not allege that the defendants knew they did not have proper authority. "Alabama case law has consistently granted municipal immunity under § 11-47-190 only when the wrongful conduct involved an intent to break the law." Oladeinde v. City of Birmingham, 118 F.Supp.2d 1200, 1206 (N.D.Ala. 1999) (citing Ex parte City of Gadsden and Brent Brewer, 718 So.2d 716 (Ala. 1998) (promissory fraud); Altmayer v. City of Daphne, 613 So.2d 366 (Ala. 1993) (willful and reckless misrepresentations and promissory fraud); Scott v. City of Mountain Brook, 602 So.2d 893 (Ala. 1992) (civil conspiracy and intentional interference with business relationship)).

9

While the court agrees that the allegation that the entry was with the purpose of converting the property for defendants' own use implies an intentional act and purposeful motive, it does not foreclose the possibility that their intentions were based on the belief that they had proper authority to do so. Plaintiff's allegations do not imply that defendants acted with the knowledge that their actions were wrongful or were not properly authorized. If the employees were mistaken in their belief that they had proper authority, then their trespass could have resulted from their neglect or carelessness. The court finds that the amended complaint was broad enough to include such a claim.

Defendants cite <u>Scott v. City of Mountain Brook</u>, 602 So.2d 893 (Ala. 1992) in support of their argument that a claim alleging a purposeful scheme is barred by § 11-47-190. However, the claims in <u>Scott</u> can be distinguished from the claim asserted in the instant case. In <u>Scott</u>, the plaintiff asserted claims for intentional interference of a business relationship and civil conspiracy. The <u>Scott</u> plaintiff alleged that city council employees with knowledge of a business relationship, intentionally interfered with that business relationship and conspired with others, with the purpose of causing damage to the plaintiff, to withhold consent for the issuance of certain bonds. <u>Id.</u> at 894. It is hard to imagine how any civil conspiracy claim could be based on negligence. The allegation that the defendants "conspired" implies an intent to act wrongful. "Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." <u>Keith v. Witt Auto Sales, Inc.</u>, 578 So.2d 1269, 1274 (Ala. 1991) (citing <u>Eidson v. Olin Corp.</u>, 527 So.2d 1283 (Ala. 1988)). In the instant case, unlike <u>Scott</u>, there is no allegation that defendants conspired to harm the plaintiff or that they acted knowingly.

Nevertheless, the court finds plaintiff's trespass claim fails with regard to the entry on the property and the demolition of the home because plaintiff has not shown that the employees did not have proper authority. An entry cannot be based on negligence if it did not result from a mistake or error of some kind. Moreover, the defendants' entry was not wrongful if the defendants had proper authority to enter and demolish the property. Alabama defines trespass as the "entry on the land of another without express or implied authority." Cent. Parking Sys. v. Steen, 707 So.2d 226, 228 (Ala. 1997) (quoting Foust v. Kinney, 202 Ala. 392, 80 So. 474, 475 (1918)). "If a party enters property or possesses property under a legal right, entry or possession pursuant to that right cannot constitute a trespass." Boyce v. Cassese, 941 So.2d 932, 945 (Ala. 2006).

Plaintiff asserts that defendants entered the property without plaintiff's permission and without a condemnation proceeding as required by Alabama Code § 18-1A-32. However, defendants entry and demolition was pursuant to Ordinance 1912 which was enacted pursuant to Alabama's "Municipal Authority to Repair or Demolish Unsafe Structures" Act. ALA. CODE § 11-53B-1 et. seq. (1975). Plaintiff has not specifically argued that Ordinance 1912 or Alabama Code § 11-53B-1 are somehow invalid. Section 11-53B-1 provides the following:

> The Legislature finds all of the following:
>
> (1) It is estimated that within the municipalities of the state, there exist several thousand parcels of real property that due to poor design, obsolescence, or neglect, have become unsafe to the extent of becoming public nuisances. Much of this property is vacant or in a state of disrepair and is causing or may cause a blight or blighting influence on the city and the neighborhoods in which the property is located. Such property constitutes a threat to the health, safety, and welfare to the citizens of the state and is an impediment to economic development within the municipality. This threat can be minimized if an incorporated municipality is authorized to repair the affected structures and is able to recover the cost of the repairs. In addition, where the municipality has undertaken the demolition of the

structures and has taken a lien on the real property for the cost of the demolition, there has not been an effective method for recovering this assessment. These obligations owed to municipalities have largely been under-performing assets that could be converted to cash, providing the municipalities with much needed revenues.

(2) It is the intent of this chapter to authorize a municipality of the state to proceed with the demolition or repair of a structure based on its own findings, and to set out a method for collecting the assessment liens so imposed.

ALA.CODE § 11-53B-1 (1975). The above provision expressly states that the intent of the statute is to permit a municipality to proceed with demolition of a structure <u>based on its own findings</u>. There is no requirement that a City commence a judicial condemnation proceeding. The statute cited by plaintiff, § 18-1A-32, requires a condemnation proceeding when "property is to be acquired by a condemnor through the exercise of its power of eminent domain." ALA. CODE § 18-1A-32 (1975). In the instant case, the City clearly did not acquire the property. The City had a legal right pursuant to Ordinance 1912 to repair or demolish buildings it found to be unsafe.[2] Accordingly, the court finds that defendants' entry and demolition of the structure was authorized.

Plaintiff also argues that defendants' entry was not with proper authority because they did not comply with the notice requirements of § 11-40-31. Ordinance 1912 states that "the Official shall give the Owner and all mortgagees of record notice to remedy the unsafe condition of the Building or structure." (Doc. 54-3, p. 3). It further states the following:

Notice shall be sent by certified or registered mail:

(1)   to the Owner's address on file in the Revenue Commissioner's office;
(2)   to the address of the property; and

---

[2] The court notes that plaintiff has not alleged that the structure was safe or that the inspection report was inaccurate.

>       (3)     to all mortgagees of record to the address set forth in the mortgage, or if no
>               address is set forth in the mortgage, to the address determined to be the
>               correct address by the Official.

(Doc. 54-3, p. 3). Ordinance 1912 also requires that the notice "shall also be posted at or within three (3) feet of an entrance to the Building." (Doc. 54-3, p. 4).

The evidence before the court only shows that notice was mailed to the address of the property and was posted on the front door of the property. There has been no evidence of any mortgages presented. Nor has there been any evidence that the address on file in the Revenue Commissioner's office at the time of the notice was different than the address of the property. However, on April 16, 2007, about six and a half months after the September 26, 2006, demolition, and more than two years after notice was first mailed to the property, the City mailed to plaintiff at her current residence, a notice of a hearing to fix and assess the cost of demolition. It is unclear when the City became aware of plaintiff's current address or whether notice to the address of the property was sufficient under the ordinance. However, even if notice was not compliant with Ordinance 1912, plaintiff admits to receiving actual notice prior to the demolition. Plaintiff is unsure when she first visited the house and saw the notice on the door and can only state that it was sometime between 2004 and 2006. As will be discussed further below with regard to plaintiff's due process claim, plaintiff clearly has not shown that her notice was insufficient to apprise her of the situation and afford her an opportunity to respond. As such, the court finds that plaintiff has failed to show that she did not receive sufficient notice.

Plaintiff also argues that notice was insufficient or that defendants did not have proper authority because the Mayor told plaintiff that the City would not demolish the structure "anytime

soon" and told plaintiff that they would contact her when her time to restore the property was up. There is some question as to when these communications occurred. They reportedly took place shortly after plaintiff discovered the notice on the door of the house and plaintiff cannot remember if that was as far back as 2004 or as recent as 2006. Thus, by plaintiff's own account, she may have seen the notice in 2004, talked to the Mayor about and understood she would have some time to restore the property, but then waited more than two years before doing anything else about the matter. Plaintiff did not follow up her conversation with any written confirmation and did not make any effort towards making repairs until September or October of 2006, when plaintiff took a contractor by the house to get an estimate and discovered it had been torn down. Ordinance 1912 provides that plaintiff may file a written request for a hearing with her objections within 30 days after the date of the notice. (Doc. 54-3, p. 5). Plaintiff did not file a request for a hearing. Under the ordinance, the filing of a request for a hearing holds in abeyance any action by the City and requires the City Council to hold a hearing within 30 days after the request. (Doc. 54-3, p. 5). If a party is aggrieved by the City Council's decision, they can appeal the decision to the Circuit Court within 10 days of the Council's decision. (Doc. 54-3, p. 5). Ordinance 1912 states that if the owner fails to take action, the City may repair or demolish the building and assess the expenses on the land on which the building stands. (Doc. 54-3, p. 4). In this case, the plaintiff failed to take any action towards repairing the property, did not file a request for a hearing, and in fact had no verbal or written communication with the City of Prichard for more than two years. As such, the court finds that defendants clearly had authority under the Ordinance to proceed to demolition.

As to plaintiff's trespass claim regarding the use of the property as a parking lot, there has been no contention that defendants had proper authority to use the property in that manner. Although there is no direct evidence that the officers believed they had authority to park on the property or that they believed they were parking on City property, looking at the facts in the light most favorable to plaintiff, it is possible a jury could conclude that the officers were negligent or careless in parking on plaintiff's property. As soon as the City realized the cars were being parked on plaintiff's property, the City directed the employees to cease parking there and they did. Thus, the court finds there is a material issue of fact regarding plaintiff's trespass claim to the extent it is based on defendants' use of her property as a parking lot.

### 2. Fifth Amendment Taking

Plaintiff claims the "City of Prichard, and the Prichard City Council, through official action and policies, approved and carried out by elected officials, deprived Plaintiff of her real property without due process and a hearing, and used Plaintiff's property for municipal purposes." (Doc. 4, ¶ 23). The amended complaint further asserts that the "Prichard City Council, acting under color of municipal ordinances, approved and enforced the improper and illegal actions of the City Officials responsible for the deprivation of Plaintiff's federal constitutional rights." (Doc. 4, ¶ 24). The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, see Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), provides that "private property shall not be taken or damaged for public use, without just compensation." The Fifth Circuit has stated the following with regard to Fifth Amendment claims concerning the destruction of nuisance property:

> Neither the Fifth nor the Fourteenth Amendments to the Federal Constitution, . . . operate to limit the reasonable and just exercise of the police power of the state. Vague, shadowy, and shifting though the limits of this power sometimes appear to be, it is settled that in the exercise of the police power a state may take, damage, or destroy private property without compensation, when the public necessity, the public health, or the public safety require it to be done. Because, however, these limits are shadowy, vague, and apparently shifting, it is in the last analysis for the courts to say whether questioned action has properly called into being the exercise of the power, and whether the power is being exercised reasonably and within the limits of public necessity.

Hulen v. City of Corsicana, 65 F.2d 969, 970 -971 (5th Cir. 1933) (footnote and citations omitted).[3]

Thus, a municipality's destruction of private property without compensation will not violate the Fifth Amendment so long as the destruction was being exercised reasonably and within the limits of public necessity. As the Middle District of Alabama recently explained:

> The Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). Therefore, "a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 491 n. 22, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). "The exercise of the police power by the destruction of property which is itself a public nuisance ... is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner." Empire State Ins. Co. v. Chafetz, 278 F.2d 41, 42 (5th Cir.1960) (quoting Pasternack v. Bennett, 138 Fla. 663, 671, 190 So. 56 (Fla.1939)). In other words, it is settled that in the exercise of the police power a State "may take, damage, or destroy private property without compensation, when the public necessity, the public health, or the public safety require it to be done." Hulen v. City of Corsicana, 65 F.2d 969, 970 (5th Cir.1933).

---

[3] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Ashe v. City of Montgomery, 2010 WL 4941973, *2 (M.D. Ala. Nov. 30, 2010) (footnote omitted). In the instant case, there has been no allegation or argument that the structure which was destroyed by the City was not actually a nuisance. The Building and Inspection Department of the City of Prichard made a structural and unit inspection of the property and determined that it was structurally damaged, had a bad roof, bad electrical and bad plumbing system. Plaintiff never objected to the findings of the inspection or requested a hearing on the issue and has presented no evidence that the structure was safe. All of the evidence before the court indicates that the public necessity, the public health, or the public safety required that the structure be destroyed. As such, the defendants' exercise of police power, was clearly reasonable and within the limits of public necessity and the destruction of her property without compensation did not violate the Fifth Amendment Takings Clause.

### 3. Due Process Violation

"[T]he Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" Jones v. Flowers, 547 U.S. 220, 223, 126 S.Ct. 1708, 1712 (2006) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Due process does not require actual notice, but rather "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 226 (citations omitted). In Jones, the Supreme Court stated the following:

> It is true that this Court has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent. See, e.g., Dusenbery [v. United States, 534 U.S. 161, 168-169, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)]; Mullane, 339 U.S., at 314, 70 S.Ct. 652. In each of these cases, the government

attempted to provide notice and heard nothing back indicating that anything had gone awry, and we stated that "[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." Id., at 315, 70 S.Ct. 652; see also Dusenbery, supra, at 170, 122 S.Ct. 694.

Jones, 547 U.S. at 226. The Jones Court found that since the mailed notice had come back unclaimed, the City was required to take additional steps to provide notice. In the instant case, there has been no evidence presented that the notice was returned to the City as unclaimed. In such cases, the Supreme Court has deemed notice to be constitutionally sufficient. Moreover, in the instant case, the plaintiff received actual notice. Actual notice is more notice than due process requires. See United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367, 1378 (2010) ("Here, United received actual notice of the filing and contents of Espinosa's [bankruptcy] plan. This more than satisfied United's due process rights."); Log Creek, LLC. v. Kessler, 717 F.Supp.2d 1239, 1245 (N.D. Fla. 2010) (stating that where actual notice was provided, "minor defects" such as the notice not being sent by certified mail as required by the ordinance, "plainly did not rise to the level of a due-process violation."). "The Due Process Clause ... safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness....'" Log Creek, 717 F.Supp.2d at 1245 (quoting Rivera v. Illinois, 129 S.Ct. 1446, 1454, 173 L.Ed.2d 320 (2009)). "The Due Process Clause does not transform every violation of a state or local procedure into a constitutional violation." Id. In the instant case, there is no evidence that the City knew plaintiff's current address until after the demolition occurred and there is also no evidence that the notice mailed to the property was returned unclaimed. Since plaintiff received actual notice, the court

finds that her due process rights were not violated. Plaintiff was apprised of the City's intentions and was afforded an opportunity to present her objections.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment (Doc. 49), is hereby **GRANTED** as to the following claims of plaintiff:

1) trespass based on defendants' entry on plaintiff's property and destruction of her home;

2) fifth amendment taking;

3) due process violation;

4) fraud, misrepresentation and suppression;

5) negligence;

6) wantonness; and

7) failure to provide honest government.

Defendants' motion for summary judgment is **DENIED** as to plaintiff's claim for trespass based on defendants' use of her property as a parking lot.

It is **FURTHER ORDERED** that plaintiff's motion for summary judgment (Doc. 53), is **DENIED**.

**DONE and ORDERED** this 11th day of February, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE